IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**YESIKA GUTIERREZ-CALDERON**,
    Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 24-1208 (BJM)

## OPINION AND ORDER

Yesika Gutierrez-Calderon ("Gutierrez-Calderon") seeks review of the Commissioner of the Social Security Administration's (the "Commissioner") finding that she is not entitled to benefits under the Social Security Act, 42 U.S.C. § 423. Gutierrez-Calderon contends that the administrative law judge's ("ALJ") decision finding her not disabled contains procedural errors and is at odds with the evidence of her disability. Docket No. ("Dkt.") 16. The Commissioner opposed. Dkt. 18. The case is before me with the consent of the parties. Dkts. 8, 9.

For the following reasons, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987). In other words, "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ . . . [i]t does not fall on the reviewing court." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001).

A claimant is disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination

of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's residual functional capacity and determines whether the impairments prevent the claimant from doing the work she has performed in the past.

An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of her residual functional capacity, as well as age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving she cannot return to her former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz*, 890 F.2d at 524. Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

# BACKGROUND

## A. Medical History

Gutierrez-Calderon was born on December 10, 1972. Transcript ("Tr.") 35. Prior to 2000, she worked as a cashier for seven years. Tr. 385. She completed a year-long college secretarial course in 2000. Tr. 45-46. She then spent roughly fifteen years working at Kmart as a supervisor in the jewelry department. Tr. 46. She gradually developed certain ailments discussed in greater detail below, and lost her job in May 2017. Tr. 151; *infra* pp. 4-10. She applied for social security benefits on October 18, 2018, claiming a disability onset date of May 4, 2017. Tr. 20. However, her application was denied. *Id*. She applied for benefits again on December 23, 2020, claiming the same initial onset date, which is the application currently under review. *Id*. Her date last insured is December 31, 2022. Tr. 22.

Next is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the social security transcript.

*Medical Sources*

**Dr. David Flores**

The record contains progress notes from Dr. David Flores, a psychiatrist, taken between June 2016 and June 2022. *See* Tr. 137-158; 238-260. Dr. Flores's progress notes show how Gutierrez-Calderon's psychiatric condition deteriorated during the insured period. Initial progress notes, from when she was still employed at Kmart, diagnose major depressive disorder and generalized anxiety. Tr. 157-158. She was prescribed medications to treat these conditions. *Id*. She was anxious about her job and felt her supervisor was "looking for a way to get rid of" her. *Id*. She was also anxious about her son's separation from his girlfriend. *Id*. After losing her job, her conditions became more severe and she stopped taking her medication for several months. Tr. 151. In April 2018, Dr. Flores recommended partial hospitalization in light of her psychiatric condition. Tr. 149-150. This progress note also recorded a primary insomnia diagnosis for the first time. *Id*. In September 2019, she began reporting issues with her husband. Tr. 141. In January 2020, she began reporting tremors, while also noting that her medications were helping improve her

conditions. Tr. 139. In May 2021, she again reported not taking her medications. Tr. 247. She was back on her medication in October 2021. Tr. 244. In June 2022, she reported that her marriage had broken down and that she almost left her husband. Tr. 238. Throughout the treatment period, Dr. Flores's progress notes record that Gutierrez-Calderon's physical appearance deteriorated and that by June 2022, she was poorly groomed at appointments. *Id*. The final progress note reports she was anxious, her speech fast and pressured, and her orientation, concentration, and insight were decreased. *Id*. On the other hand, her thought process remained coherent and logical, and her memory intact. *Id*.

### Dr. Aristides Colon Pena

The record contains progress notes from Dr. Aristides Colon Pena dating from July 2019 until February 2021. *See* Tr. 690-703; 875-881; 1010. The initial progress notes indicate diagnoses for generalized anxiety disorder and major depressive disorder. Tr. 702-703. Later progress notes add diagnoses of onychomycosis, iron deficiency anemia, and carpal tunnel syndrome, *see* Tr. 698-699, and the final progress note adds an osteoarthritis diagnosis. Tr. 691. The progress notes also sporadically diagnose obesity. *See* Tr. 693; 703. However, the notes also indicate that she did not have any gross motor or sensory deficits. Tr. 690-703.

Dr. Colon Pena also prepared a Medical Source Statement, dated July 12, 2022, in connection with Gutierrez-Calderon's application for benefits. Tr. 729. The Medical Source Statement notes a treatment relationship of ten years and lists diagnoses of major depression, carpal tunnel syndrome, and osteoarthritis. *Id*. Symptoms of wrist pain, hand numbness, hand pain, sadness, insomnia, low energy, anhedonia, and poor concentration are noted. *Id*. The Medical Source Statement attests that her symptoms would "constantly" be severe enough to interfere with her attention and concentration for performing simple work tasks. *Id*. The Medical Source Statement claims she could sit, stand, and walk for up to two hours, and lift five pounds frequently. *Id*. But it also notes that she would need daily breaks and rest of 4-8 hours per day and would need to take more than four days off per month due to her health conditions. *Id*.

### Dr. Jomaira Ross Casiano

Dr. Jomaira Ross Casiano, a clinical psychologist, prepared a mental status examination, dated March 23, 2021, upon referral from the Commissioner. Tr. 159-166. According to Dr. Ross Casiano's notes, Gutierrez-Calderon had depression, panic attacks, anxiety in crowds, arthritis, carpal tunnel syndrome, hip problems, degenerative osteoarthritis, and a spur. Tr. 159. She could drive and handle money, though she reported that she could not go places without being accompanied by her husband or daughter. Tr. 160. She would spend her time listening to the radio or watching TV, and occasionally doing household chores on days her arthritis would allow. Tr. 161. She had good rapport, normal tone of voice, logical and coherent thought process, and was oriented in time, place, and person. Tr. 162. Her memory (short, medium, and long-term) appeared intact. Tr. 162-163. Her attention, concentration, intellectual capacity, and judgment showed impairments. Tr. 163-164. Overall, Dr. Ross Casiano found that "her prognosis is poor" and that her ability to interact and manage social situations was limited. Tr. 164. However, she maintained "the ability to understand and adapt." *Id*.

### Dr. David Blas Boria

Dr. David Blas Boria, a neurologist, performed a neurological evaluation on March 26, 2021. Tr. 714-723. Dr. Blas Boria provided an overall diagnostic impression for bilateral carpal tunnel syndrome, right hip degenerative changes, and migraine headaches. Tr. 717. However, he found no hand or gait limitations. Tr. 718-719. While she had bilateral positive Tinel and Phalen, tenderness to palpitation over hands, wrists, right hip, and right lumbar paraspinal muscles, she could still sit, stand, walk, travel, pinch, grasp, and write. Tr. 716-717. And during the exam, she was alert, cooperative, and had clean appearance. Tr. 715.

### Dr. Gladimiro Davila

Dr. Gladimiro Davila, a radiologist, performed an analysis of Gutierrez-Calderon's hands in March 2021 and of her back and right hip in April 2021. Tr. 712-713; 724-725. Dr. Davila classified her osteoarthritis as mild with respect to her hands and spine. *Id*. He observed a lumbar spasm in her spine and mild enthesopathic changes in her pelvis. *Id*.

### Dr. Virgilio Paniagua

The record contains chiropractic progress notes dated from November 2020 to May 2021, purportedly provided by Dr. Virgilio Paniagua. Tr. 796-798. However, these notes are illegible. *Id*.

### Dr. Brenda Concepcion

Dr. Brenda Concepcion, a state agency medical consultant, performed an evaluation of Gutierrez-Calderon's physical conditions on April 14, 2021. Tr. 376-387. While Dr. Concepcion found that Gutierrez-Calderon's osteoarthritis was severe, she found that her carpal tunnel syndrome was not severe. Tr. 379-380. Her osteoarthritis did not meet the Listing requirements, Tr. 384, and Dr. Concepcion opined that she maintained residual functional capacity for light work. Tr. 386. Dr. Concepcion's opinion was found to be substantially correct and upheld on reconsideration. Tr. 389-407.

### Dr. Sydnia Rosado

Dr. Sydnia Rosado, a state agency medical consultant, performed an evaluation of Gutierrez-Calderon's mental condition on May 26, 2021. Tr. 378-387. Overall, Dr. Rosado found that Gutierrez-Calderon's mental impairments were non-severe. Dr. Rosado noted that she could still drive, go shopping, handle funds, and did not allege memory deficits. *Id*. Her depression was found to not meet Listing 12.04 – her abilities to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself were only mildly impaired. Tr. 380. Overall, Dr. Rosado found that the evidence did not support any significant cognitive defect. Tr. 382. Dr. Rosado's opinion was found to be substantially correct and upheld on reconsideration. Tr. 389-407.

### Dr. Jose Gonzalez-Mendez

Dr. Jose Gonzalez-Mendez, a state agency medical consultant, performed an evaluation of Gutierrez-Calderon's physical conditions on February 1, 2019, in connection with her previous social security application. Tr. 352-366. Dr. Gonzalez-Mendez found Step Two severe conditions of obesity and carpal tunnel syndrome. Tr. 358. However, he found that these conditions did not

render her disabled. Tr. 362. Her hand pain was described as mild, and all hand and finger functions were preserved. *Id*.

### Dr. Jennifer Cortes

Dr. Jennifer Cortes, a state agency medical consultant, performed an evaluation of Gutierrez-Calderon's mental condition on December 18, 2018, in connection with her previous social security application. Tr. 352-366. Dr. Cortes found that her reports of anxiety, depression, and decreased concentration were credible. Tr. 359. However, based on the overall evidence in the record, Dr. Cortes found that she was able to understand, remember, and execute simple instructions, maintain attention, sustain concentration, persistence, and pace, adapt to changes, and interact adequately with others. *Id*. Dr. Cortes thus concluded that her mental conditions did not render her disabled. *Id*.

***Other Sources and Documentation***

The record contains reports from Dr. Ana Santos detailing Gutierrez-Calderon's bariatric surgery in 2014. Tr. 949-951. These date from before her alleged onset of disability. Similarly, sporadic progress notes from Dr. Angel Gonzalez Rodriguez date from 2016, before the alleged onset date. Tr. 93; 123.

Gutierrez-Calderon was admitted for partial hospitalization at Mennonite Hospital CIMA on April 24, 2018, due to her mental health. *See* Tr. 128-136; 170-234. She was discharged on April 30, 2018. Tr. 129. Evaluation notes indicate that she was concerned about how long she had been without a job and was anxious over her son's new relationship. Tr. 133. The notes also record that she attempted suicide on one occasion in the past but denied any suicidal ideas at the time of her partial hospitalization. Tr. 185. Upon discharge, she was noted to be calm and communicative and understood the need for further therapy. Tr. 130. However, the discharge notes also record mood disorder, difficulty making decisions, family problems, and poor management of emotions. Tr. 175.

Also in the record are various notes related to Gutierrez-Calderon's emergency room hospitalization for a small bowel obstruction in June 2020. Tr. 890-899; 904-908; 910-914; 927-

937; 941-948. No post-treatment complications were documented, and she was apparently discharged after a two-day hospital stay. Tr. 937.

### B. Procedural History

Gutierrez-Calderon's application was reviewed by ALJ Hortensia Haaversen, who held a hearing on October 31, 2022. Tr. 45-55. During the hearing, Gutierrez-Calderon testified about her education and work experience. Tr. 45-46. At Kmart, she supervised three to four other employees in the jewelry department. Tr. 46. Next, she testified about her health conditions. She characterized her depression as severe and noted her panic attacks and anxiety. Tr. 47. Her panic attacks are caused by crowding and noise. Tr. 47-48. Interacting with other people also makes her irritable. Tr. 48-49. She also noted memory issues, attesting that she forgets everything not written down. Tr. 49. She also suffers from insomnia, generally sleeping only two to three hours straight at night. Tr. 49-50. While she has a driver's license and can drive, she generally only goes out accompanied by her husband. Tr. 50.

Additionally, she discussed her physical conditions of carpal tunnel syndrome, arthritis, and anemia, noting that she was generally tired and in lots of pain. Tr. 47. Her arthritis causes her hands to cramp and lose strength, as well as producing pain, causing her difficulty in performing basic tasks like opening water bottle. Tr. 51. Her ability to lift objects is limited to around five to ten pounds. *Id*. Her ability to sit for extended periods of time is limited by her arthritis and hip spur. *Id*. She testified that she could walk for an hour to an hour and a half before her hip begins bothering her. Tr. 52.

Next, Aracelis Figueroa, vocational expert ("VE") for the Social Security Administration, was questioned by the ALJ. VE Figueroa characterized Gutierrez-Calderon's previous work as a retail store manager as light exertion and as a store laborer as medium exertion. *Id*. VE Figueroa considered someone with Gutierrez-Calderon's limitations and opined that such a person would be unable to do her previous work. *Id*. However, VE Figueroa testified that other jobs existed in the national economy which someone with Gutierrez-Calderon's limitations could perform. Tr. 53.

The ALJ issued her opinion on January 26, 2023. Tr. 20-37. The ALJ found that Gutierrez-Calderon 1) had not engaged in any substantial gainful activity since the disability onset date (May 4, 2017), 2) had only one severe impairment, osteoarthritis, 3) did not have a condition that met the severity of one of the Listings, 4) could not return to her former employment, and 5) maintained a residual functional capacity to perform light work. *Id*. Her anemia, carpal tunnel syndrome, and obesity were each deemed non-severe, Tr. 23-24, though the ALJ noted that she considered these conditions in her residual functional capacity analysis. Tr. 25. The ALJ found that her other alleged conditions and symptoms (digestive disorder, hypoglycemia, migraine headaches, and hypertension) were not medically determinable impairments. Tr. 24-25. Next, the ALJ found that her osteoarthritis did not meet any Listing (1.15, 1.16, 1.18, or 14.09). Tr. 28-30. Her osteoarthritis was characterized as "mild" in imaging studies, and Dr. Blas Boria had indicated she maintained normal gait and no limitations to use both hands. Tr. 29. While she reported difficulties with daily tasks such as grip strength, she was able to feed herself and prepare simple meals. Tr. 30. And while her concentration and attention span were allegedly impaired, she could drive and handle funds. *Id*. Last, the ALJ found that she preserved the residual functional capacity for light work. The evidentiary record suggested her osteoarthritis was mild, her thought process was coherent and logical, her memory was intact, and her judgment largely unimpaired. Tr. 30-35. The ALJ found that while she had medically determinable impairments that could reasonably be expected to cause her alleged symptoms, her testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." Tr. 32. Specifically, the ALJ noted that she had not seen a neurologist for her migraine headaches, had no limitations in her hands or gait as per Dr. Blas Boria's examination, and had no evidence of specialized treatment for her osteoarthritis apart from medical appointments with Dr. Colon Pena. Tr. 32-33. Her mental conditions were generally responsive to medication and progress notes indicated that she maintained coherent and logical thought process with intact memory and judgment. *Id*.

While the ALJ considered each medical source in the record, she found Dr. Colon Pena's Medical Source Statement unpersuasive. The ALJ reasoned that the Medical Source Statement contradicted his own progress notes, which did not report gross motor or sensory deficits. Tr. 33. The Medical Source Statement was also inconsistent with Dr. Blas Boria's findings of no limitations standing, walking, sitting, or using her hands. Tr. 33-34. Similarly, the examination of her mental state by Dr. Ross Casiano found she responded with a normal tone, remained cooperative, established a good rapport, and answered every question. Tr. 34.

After finding that she possessed residual functional capacity for light work, the ALJ concluded that Gutierrez-Calderon was not disabled during the insured period. Tr. 36-37. The Appeals Council denied review, Tr. 1-4, and this action followed.

## DISCUSSION

Gutierrez-Calderon raises three main arguments challenging the ALJ's decision finding her not disabled. She contends that the ALJ 1) improperly declined to reopen her previous application for social security benefits, 2) erred in assessing her hand conditions of carpal tunnel syndrome, wrist sprain, and osteoarthritis, and 3) erred in assessing her mental conditions. Additionally, Gutierrez-Calderon lists new medical evidence that was not available to the ALJ but was available to the Appeals Council, implicitly arguing that this evidence warrants a reversal of the denial. I will consider each argument below.

### A. Reopening the Previous Denial of Benefits

Gutierrez-Calderon's first argument is that the ALJ declined to reopen her previous application and presented insufficient reasons for this decision. This, according to Gutierrez-Calderon, violated the Social Security Act, constitutional due process, and the Commissioner's regulations for reopening a previous case. Dkt. 16 at 11-16.

The ALJ states the following in her opinion, at Tr. 20:

> Pursuant to HALLEX I-2-9-10B2, the [ALJ] does not need to make a finding on the issue of reopening when issuing an unfavorable decision. The claimant had filed a prior claim on October 18, 2018 that was denied by initial determination on February 14, 2019 with the same alleged onset date of May 4, 2017. The prior claim

> was not appealed. The current Title II claim is filed within 4 years of the notice of the initial determination. There is an implied request for reopening. However, good cause is not established for missing a deadline to file review pursuant to 20 CFR 404.911.

The ALJ then went on to consider all of the medical evidence from the entire period from the alleged initial onset date of May 4, 2017 until the date last insured of December 31, 2022.

I find that the issue of reopening Gutierrez-Calderon's earlier application does not present an issue of reversible error. The ALJ's decision with respect to the earlier application was correct. Despite Gutierrez-Calderon's assertion, she did not explicitly ask to reopen the previous application – she said "please reopen any prior claim filed within the last year," but her earlier claim was filed over two years before. Tr. 566; *supra* p. 4. Since the decision was unfavorable, the ALJ did not need to make a finding on the issue of reopening pursuant to HALLEX I-2-9-10B2. Even if the ALJ's decision was incorrect, it would not have prejudiced Gutierrez-Calderon's application. The ALJ reviewed all of the evidence from the initial onset date – no evidence was left out by deciding not to reopen the previous application. In effect, the ALJ "constructively" reopened the case, and any error was thus harmless. *See Thomas P. v. Kijakazi*, C.A. No. 21-00020-WES, 2022 U.S. Dist. LEXIS 4217, at *18-19 (D.R.I. Jan. 10, 2022) ("[T]he ALJ held a full administrative hearing and issued a decision on the merits that Plaintiff was not disabled for the entire relevant period. The record is clear that the ALJ constructively reopened the prior claims . . . [t]hus, any claimed error in this regard is harmless."). Therefore, Gutierrez-Calderon's first argument is without merit.

### B. Hand Conditions

Gutierrez-Calderon's second argument is that the ALJ improperly evaluated her hand conditions, including her carpal tunnel syndrome, wrist sprain, and osteoarthritis. She makes three objections to the ALJ's reasoning. First, she claims the ALJ erred in finding her carpal tunnel syndrome non-severe. Second, she claims the ALJ failed to adequately develop the record. Third, she argues that the ALJ's residual functional capacity assessment was flawed.

With respect to the first argument, Gutierrez-Calderon takes issue with the ALJ's reliance on the opinions of Dr. Blas Boria and Dr. Concepcion, pointing out that Dr. Blas Boria examined her only once. Essentially, Gutierrez-Calderon is asking to re-weigh the evidence, which it is not my place to do. *See Seavey*, 276 F.3d at 10. The fact that Dr. Blas Boria reported that she maintained function in her hands, and that Dr. Concepcion rated her carpal tunnel syndrome as non-severe, provides substantial evidence supporting the ALJ's determination. *See supra* pp. 6-7.

Gutierrez-Calderon's second argument is that the ALJ failed to adequately develop the record with respect to her hand limitations. *See Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (ALJ has a duty to fully and fairly develop the record). The ALJ's responsibility to develop the record "increases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the [ALJ], without undue effort, to see that the gaps are somewhat filled . . .". *Id*. Gutierrez-Calderon argues the ALJ should have investigated and resolved the inconsistency between Dr. Concepcion's finding that her carpal tunnel syndrome was not severe and Dr. Gonzalez-Mendez's opinion finding that it was. She also claims the ALJ erred in not asking any follow-up questions after her attorney's questioning during the hearing. With respect to the first point, Dr. Gonzalez-Mendez ultimately concluded that her carpal tunnel syndrome did not render her disabled, observing that the evidence showed the condition was mild. *See* Tr. 362 ("All hand and finger functions preserved. Muscle tone and bulk is normal."). The substance of the opinion was very similar to Dr. Concepcion's opinion, and it was the ALJ's prerogative to weigh this along with the other sources on the record. *See Gill v. Colvin*, No. 13-1792, 2014 U.S. App. LEXIS 25310, at *7 (1st Cir. 2014) ("[While] the ALJ's opinion could have been more explicit in her explanation about the weight she gave to the opinions of the various state agency consultants," remand was not required because "[t]he ALJ's findings [were] supported by the record."). On the second point, Gutierrez-Calderon's attorney had already asked detailed questions concerning her conditions. *See* Tr. 47-52. She does not indicate what additional testimony she would have provided. *See Poirier v. Colvin*, Civil No. 14-cv-242-LM, 2015 U.S.

Dist. LEXIS 113857, at *17-18 (D.N.H. Aug. 27, 2015) (the ALJ's lack of follow-up questions was not a failure to develop the record when extensive testimony concerning the claimant's inability to tolerate pain medication was already in the record, and claimant did not point to anything additional he would have said). For the above reasons, I find that the ALJ adequately developed the record on the question of Gutierrez-Calderon's hand conditions.

Last, Gutierrez-Calderon argues that the ALJ's residual functional capacity assessment was flawed. Gutierrez-Calderon does not state her objection clearly – she appears to assert that the ALJ erred in failing to perform a "function-by-function" assessment, but then goes on to state that the ALJ "made a series of findings that demonstrate by implication that [she] performed the requisite assessment." Dkt. 16 at 24. Her residual functional capacity challenge risks waiver. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal citation omitted). In any case, I see no reversible issue with the ALJ's residual functional capacity assessment. The record contains medical sources which characterized her carpal tunnel syndrome as non-severe (Dr. Concepcion) and found no limitations in her hand function (Dr. Blas Boria). *See supra* pp. 6-7. Thus, the ALJ had substantial evidence to conclude that Gutierrez-Calderon's hand conditions would not prevent her from performing light work. Gutierrez-Calderon fails to show any reversible error.

**C. Mental Conditions**

Gutierrez-Calderon next argues that the ALJ erred in assessing her mental conditions. She appears to assert that the ALJ relied too heavily on the opinion of Dr. Rosado, the state agency medical examiner, and that her residual functional capacity analysis was insufficiently detailed. *See* Dkt. 16 at 24-26. Gutierrez-Calderon's argument is not well-developed and risks waiver. *See Zannino*, 895 F.2d at 17. In any case, this argument asks for a re-weighing of the medical evidence, rather than pointing to a legal or procedural error in the ALJ's analysis. And the ALJ's opinion regarding Gutierrez-Calderon's mental conditions is supported by substantial evidence on the

record. Dr. Rosado's opinion concluded that her mental impairments would not prevent her from performing light work. *See supra* p. 7. Dr. Flores and Dr. Ross Casiano noted various mental limitations, but also recorded that many important capacities remained intact. *See supra* pp. 4, 6. Therefore, I reject Gutierrez-Calderon's argument concerning her mental conditions.

### D. New Evidence

Last, Gutierrez-Calderon lists new medical evidence that was not available to the ALJ during the hearing, but was available to the Appeals Council when the latter reviewed the ALJ's denial of benefits. *See* Dkt. 16 at 4-5. While she does not argue this explicitly, she appears to assert by implication that this new evidence warrants a reversal. However, upon review, I find that the evidence is largely duplicative of what the ALJ already reviewed. The ALJ was already aware of her partial hospitalization in 2018, and the extra records do not provide any substantially new information. Two additional progress notes from Dr. Flores similarly do not change the overall picture, since they are consistent with Dr. Flores's other progress notes that the ALJ reviewed. Therefore, the new evidence provided by Gutierrez-Calderon does not provide a reason to reverse the ALJ's denial of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of March, 2025.

S/Bruce J. McGiverin
BRUCE J. McGIVERIN
United States Magistrate Judge